O'MELVENY & MYERS LLP
ALLEN BURTON
aburton@omm.com
HANNAH CHANOINE (*pro hac vice*)
hchanoine@omm.com
7 Times Square
New York, New York 10036
Telephone:   (212) 326-2000
Facsimile:   (212) 326-2061

CARLOS M. LAZATIN (*pro hac vice*)
clazatin@omm.com
400 South Hope Street
Los Angeles, California 90071-2899
Telephone:   (213) 430-6000
Facsimile:   (213) 430-6407

*Attorney for Defendant*
*Taco Bell Corp.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NELSON ESTRELLA-ROSALES and JOANN ESTRELLA, individually and as husband/wife<br><br>                    Plaintiffs,<br><br>       v.<br><br>TACO BELL CORPORATION; YUM! BRANDS INC.; ABC CORPORATION (1-10), and JOHN DOES 1-10<br><br>                    Defendants. | Case No. 2:19-cv-18192-WJM-MF<br><br>**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Motion Day:  January 21, 2020 |

## TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ................................................................................ 1
II. FACTUAL BACKGROUND ..................................................................................... 2
    A. Taco Bell Corp.'s Chalupa Cravings Box Promotion............................................ 2
    B. Plaintiffs' Alleged Purchase of Chalupa Cravings Boxes ..................................... 3
    C. Plaintiffs' Legal Action.......................................................................................... 5
III. LEGAL STANDARD.................................................................................................. 5
IV. ARGUMENT ............................................................................................................... 6
    A. A Reasonable Consumer Would Have Been on Notice of the Price of Chalupa Cravings Boxes at the Green Brook Restaurant ...................................... 7
        1. Online Advertising and Point-of-Purchase Advertising at the Green Brook Restaurant Are Incorporated by Reference in the Complaint......... 7
        2. Clear Disclosures of the Price at the Point of Purchase and Online Foreclose Plaintiffs' Claims of Reasonable Reliance and Harm ................ 9
    B. The "Librarian" Ad Is Not Misleading to a Reasonable Consumer As a Matter of Law ..................................................................................................... 13
V. CONCLUSION.......................................................................................................... 15

## TABLE OF AUTHORITIES

Page

**Cases**

*Barry v. Arrow Pontiac, Inc.*,
    100 N.J. 57 (1985) ............................................................................................... 14

*Ciser v. Nestle Waters North America, Inc.*,
    2013 WL 5774121 (D.N.J. 2013) ........................................................................ 11

*Conner v. Purdue Farms, Inc.*,
    Civ. No. 11-888, 2013 WL 5977361 (D.N.J. Nov. 7, 2013) ................................. 6

*Dugan v. TGI Fridays, Inc.*,
    231 N.J. 24 (2017) ................................................................................................ 6

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) ................................................................................. 6

*Freeman v. Priceline.com, Inc.*,
    2013 WL 5946069 (Cal. Ct. App. 2013) ....................................................... 10, 11

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ................................................................................ 15

*Gennari v. Weichart Co. Realtors*,
    288 N.J. Super. 504 (1996) ............................................................................ 6, 12

*Holt v. Noble House Hotels & Resort, Ltd.*,
    370 F. Supp. 3d 1158 (S.D. Cal. 2019) .............................................................. 11

*In re Burlington Coat Factory Securities Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ..................................................................... 6, 8, 15

*Killeen v. McDonald's Corp.*,
    317 F. Supp. 3d 1012 (N.D. Ill. 2018) .................................................... 10, 12, 15

*N.J. Citizen Action v. Schering-Plough Corp.*,
    367 N.J. Super. 8 (N.J. App. Div. 2003) ............................................................ 12

*Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*,
    998 F.2d 1192 (3d Cir. 1993) ............................................................................... 6

*Popejoy v. Sharp Electronics Corp.*,
    2016 WL 3381229 (D.N.J. June 9, 2016) ........................................................ 8, 11

*Revell v. Port Auth. of N.Y., N.J.*,
    598 F.3d 128 (3d Cir. 2010) ................................................................................. 5

*Sikirica v. Nationwide Ins. Co.*,
    416 F.3d 214 (3d Cir. 2005) ................................................................................. 6

*Zimmerman v. Corbett*,
    873 F.3d 414 (3d Cir. 2017) ................................................................................. 6

# TABLE OF AUTHORITIES
(continued)

**Page**

**Statutes**

N.J. Admin. Code § 13:45A-9.2(a)(5) ........................................................................................ 14

**Rules**

Fed. R. Civ. P. 10(c) ................................................................................................... 2, 4, 5, 7

Fed. R. Civ. P. 12(c) ............................................................................................................. 5

Defendant Taco Bell Corp. respectfully submits this brief in support of its motion, pursuant to Federal Rules of Civil Procedure 12(c), for judgment on the pleadings.

## I.     PRELIMINARY STATEMENT

Plaintiffs allege they saw a TV ad promoting Chalupa Cravings Boxes—a value meal that packages together several popular Taco Bell menu items—for the price of $5 "at participating restaurants for a limited time." They allege this commercial "induced" them to go to a Taco Bell franchise restaurant that was *not* participating in the $5 Chalupa Cravings Boxes promotion to purchase two Chalupa Cravings Boxes. And they allege that restaurant charged them $5.99 (not $5) for each Chalupa Cravings Box—the purported injury underlying their $1.98 lawsuit.

Plaintiffs' threadbare complaint, however, conceals several key facts that undermine their claims of consumer fraud. Those facts are incorporated by reference in the complaint, and this Court can rely on them in entering judgment in favor of Taco Bell Corp. Crucially, the "extensive advertising campaign" alleged in the complaint included in-store advertising for Chalupa Cravings Boxes that clearly and unambiguously disclosed the price for that item at the particular Taco Bell restaurant Plaintiffs allege they visited. That pricing information was also available to them online. In short, Plaintiffs were on notice that the Taco Bell restaurant they selected was not a "participating restaurant" and would charge them more than $5 for a Chalupa Cravings Box, and they bought the Box anyway. On the facts alleged and incorporated by reference, Plaintiffs were not deceived, they were not defrauded, and they were not harmed.

Not only were Plaintiffs on notice that the restaurant they visited was not participating in the $5 price promotion, but no reasonable consumer would have been deceived or misled by the "Librarian" ad that Plaintiffs allege they saw. And while Plaintiffs purport to allege a *per se* violation of administrative regulations, those supposed violations are based on mischaracterizations of the ad itself—which is also incorporated by reference in the Complaint.

1

The disclaimer that the $5 price was "at participating locations" and that "prices may vary" was both more prominent and on screen longer than Plaintiffs allege in their complaint. That disclaimer was clear and conspicuous and would have put the average fast-food consumer on notice that the $5 promotional price for Chalupa Cravings Boxes was not available at every Taco Bell franchise location—as is typical for such promotions.

Plaintiffs may not draft their complaint to avoid the indisputable facts that undermine their claims. Given these facts, there is no reason for this case to proceed further. Plaintiffs have not stated claims for consumer fraud, and judgment should be entered for Taco Bell Corp.

## II.   FACTUAL BACKGROUND

### A.   Taco Bell Corp.'s Chalupa Cravings Box Promotion

In May 2018, Taco Bell Corp. ran a nationwide promotion for the Chalupa Cravings Box—a limited-time value box that included five items: a Beefy 5-Layer Burrito, a Chalupa Supreme, a Crunchy Taco, Cinnamon Twists, and a Medium Fountain Drink. Compl. ¶ 8. As Plaintiffs allege in the complaint, Taco Bell Corp. promoted the Chalupa Cravings Box through advertising on television, on its website, and in print, including at Taco Bell restaurants across the United States. *Id.* One TV ad for the Chalupa Cravings Box, called the "Librarian," featured a librarian who secludes herself away from a group of children to enjoy a moment of respite along with a Chalupa Cravings Box. *Id.* This TV spot concluded with a full-screen view of the Chalupa Cravings Box and its contents, along with the text "$5 Chalupa Cravings Box." App'x A.[1] In the same frame as the "$5" message, the advertisement included the following qualifying disclosure about the $5 promotional price: "At participating locations for a limited time. Prices

---

[1] For substantially the same reasons discussed in Section III.A.1, the "Librarian" ad is incorporated by reference in the Complaint and may be considered on a motion for judgment on the pleadings. Fed. R. Civ. P. 10(c). Taco Bell Corp. has provided the Court, as Appendix A, the full video version of the advertisement.

may vary. Tax extra." *Id.* ¶ 16. The disclaimer was presented in close proximity to the "$5 Chalupa Cravings Box" language, and was clearly legible in white font, set off against a dark gray background. *See* App'x A. The disclaimer was on-screen for five full seconds. *See id.*

As disclosed in the "Librarian" ad, not every Taco Bell franchise restaurant participated in the $5 Chalupa Cravings Box promotion. *See id.* Accordingly, Taco Bell Corp. shipped "point of purchase" advertising materials to franchise locations that allowed each restaurant to insert a price of its choosing for the Chalupa Cravings Box. Declaration of Steve Gebhardt ("Gebhardt Decl.") ¶ 3 & Ex. A. That is, each franchise location not participating in the $5 price promotion would have displayed print advertising for the Chalupa Cravings Box that indicated the price charged at that particular restaurant.

In addition to TV ads and print ads in stores, Taco Bell Corp. also promoted the Chalupa Cravings Box on the internet, including on its website. Compl. ¶ 8 (noting "internet" advertising). TacoBell.com allows anyone to find nearby Taco Bell restaurants by entering a zip code or city name. After selecting a specific Taco Bell restaurant, the web user can view the current menu items and prices charged at that location. *See* App'x B. That is, web users could determine which Taco Bell restaurants charged $5 for a Chalupa Cravings Box in May 2018. And in its advertising of the Chalupa Cravings Box, TacoBell.com also presented a disclaimer that "[p]rices and items may vary at participating locations and with substitutions." App'x B.

  B. **Plaintiffs' Alleged Purchase of Chalupa Cravings Boxes**

Plaintiffs allege that they viewed "The Librarian" advertisement in May 2018, *id.* ¶ 16, and that they "were induced to travel" to the Taco Bell branded restaurant located at 225–227 US Highway 22, Green Brook, New Jersey (hereinafter, "Green Brook Restaurant") around 8:00 P.M. on an unknown date "to specifically purchase two Chalupa Cravings Boxes." *Id.* ¶ 10. In May 2018, the Green Brook Restaurant displayed "point of purchase" advertising for the

3

Chalupa Cravings Box on the menu board that, with measurements of over 15" x 22", would have been clearly visible to restaurant patrons. Gebhardt Decl. ¶ 5 & Ex. A. Those print ads indicated that the Green Brook Restaurant charged $5.99 for the Chalupa Cravings Box. *Id.* In addition, the cash register and credit card reader at the Green Brook Restaurant also displayed the $5.99 itemized price in May 2018, which was visible to restaurant patrons before they paid for their meal. *Id.* ¶ 5.

Plaintiffs allege that, after ordering two "Chalupa Cravings Boxes" they were provided with a cash register receipt charging them $12.18 before tax.[2] *Id.* ¶ 11. That receipt indicated that the Green Brook Restaurant charged $5.99 for the Chalupa Cravings Box. App'x C. The receipt also indicated that Plaintiffs chose to pay $0.20 extra for a soft taco substitution ($0.10 for each box). *Id.* Plaintiffs were charged a total of $12.99, inclusive of $0.81 of New Jersey sales taxes. *Id.* ¶ 12. Plaintiffs allege that, after they were handed the receipt, they "questioned the restaurant's management why they were charged $12.18 for two $5.00 Cravings Boxes." *Id.* They allege the manager informed them that individual Taco Bell restaurants, such as the Green Brook Restaurant, operate as franchises that can set their own prices. Compl. ¶ 13. The manager specifically referenced the disclosure in the "Librarian" ad stating that the $5 promotional price was available only "at participating locations for a limited time" and that "prices may vary." *Id.* ¶ 13. Plaintiffs do not allege they ever asked anyone at the restaurant for a refund.

---

[2] For substantially the same reasons discussed in Section III.A.1, the receipt is incorporated by reference in the Complaint and may be considered on a motion for judgment on the pleadings. Fed. R. Civ. P. 10(c). In a demand letter to Taco Bell Corp. related to the same purchase described in the Complaint, Plaintiffs purported to attach a photograph of their receipt. A copy of that photograph is attached as Appendix C.

4

### C.    Plaintiffs' Legal Action

Plaintiffs, through their counsel, then sent a series of demand letters both to Taco Bell Corp. and to the franchisee that operates the Green Brook Restaurant.[3] *Id.* ¶ 33. These letters stated essentially the same consumer fraud claims as they now plead in their complaint. *See* App'xs D & E. Taco Bell Corp. and the franchisee separately responded to Plaintiffs' letters. App'xs F & G. The franchisee even offered to send Plaintiffs coupons for free meals. App'x G. Plaintiffs did not respond to or accept the franchisee's offer of compensation.

Instead, Plaintiffs sued Taco Bell Corp., bringing this individual action for compensatory damages (based on an alleged $1.98 overcharge), punitive damages, and attorneys' fees. Compl. ¶ 65. Plaintiffs purport to state two claims for relief: (1) violation of the New Jersey Consumer Fraud Act ("CFA"), and (2) common law fraud. *Id.* at 6, 10. Although Plaintiffs filed this case as an individual action, not a class action, in light of their claims for extraordinary damages and fees, Taco Bell Corp. removed the action to this Court. Dkt. 1.

## III.   LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that "a party may move for judgment on the pleadings" after the pleadings are closed. Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion [to dismiss]." *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). That is, the court must accept the truth of all factual allegations in the complaint and must draw all reasonable inferences in favor of the non-movant, *id.*, but "may [also] consider an undisputedly authentic document that a defendant

---

[3] For substantially the same reasons discussed in Section III.A.1, these letters are incorporated by reference in the Complaint and may be considered on a motion for judgment on the pleadings. Fed. R. Civ. P. 10(c). Copies of these letters are attached as Appendices D & E, Taco Bell Corp.'s response is attached as Appendix F, and the franchisee's response is attached as Appendix G.

5

attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). For claims sounding in fraud, a plaintiff fails to state a claim unless the circumstances of fraud are pleaded with particularity in compliance with Rule 9(b). *In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1417 (3d Cir. 1997).

A Rule 12(c) motion should be granted "if the movant establishes that 'there are not material issues of fact, and he is entitled to judgment as a matter of law.'" *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (quoting *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005)). It is "well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (per curiam).

### IV.     ARGUMENT

To state a claim under the New Jersey CFA, Plaintiffs must allege facts showing that Taco Bell Corp. made statements likely to deceive a reasonable consumer. *Conner v. Purdue Farms, Inc.*, Civ. No. 11-888, 2013 WL 5977361, at *6 (D.N.J. Nov. 7, 2013). Plaintiffs must also demonstrate an ascertainable loss as well as a causal relationship between the unlawful conduct and the claimed ascertainable loss. *Dugan v. TGI Fridays, Inc.*, 231 N.J. 24, 52 (2017). And to state a claim for common law fraud, among other elements, Plaintiffs must allege reasonable reliance on a *false* statement that Defendant intended Plaintiffs to rely upon. *Gennari v. Weichart Co. Realtors*, 288 N.J. Super. 504, 535 (1996).

Even when the factual allegations of the Complaint are taken as true, Plaintiffs have not plausibly alleged that a reasonable consumer would be misled by Taco Bell Corp.'s Chalupa Cravings Box promotion. Anyone can readily ascertain the prices charged at individual Taco Bell restaurants via TacoBell.com. Further, every Taco Bell restaurant—including the Green

6

Brook Restaurant—prominently displayed "point of purchase" advertising materials that indicated the price of the Chalupa Cravings Box at that location. *See* Gebhardt Decl. ¶¶ 3–5. And the "Librarian" ad itself, which was the alleged source of Plaintiffs' purported belief that the price "should have been" $5 at the Green Brook Restaurant, Compl. ¶ 19, clearly and conspicuously indicated that the $5 price was available only "at participating locations" and that "prices may vary" between restaurant locations.

### A. A Reasonable Consumer Would Have Been on Notice of the Price of Chalupa Cravings Boxes at the Green Brook Restaurant

Although the Complaint details one TV advertisement, Plaintiffs have expressly put at issue Taco Bell Corp.'s "extensive advertising campaign on television, the internet and print." Compl. ¶ 8. This includes in-store advertising that Plaintiffs were *necessarily exposed to* when they visited the Green Brook Restaurant to "dine-in." App'x C. These "point of purchase" ads made clear that Plaintiffs would be charged $5.99 for a Chalupa Cravings Box, and Plaintiffs chose to pay that price anyway—they even asked for and paid to substitute soft tacos rather than the default hard shell version. Plaintiffs' allegations also encompass Taco Bell's website, which Plaintiffs could also have used to determine the price of a Chalupa Cravings Box at the Green Brook Restaurant. Under these alleged facts, Plaintiffs have not plausibly alleged the reasonable reliance, causation, or harm elements of their consumer fraud claims. This Court should therefore enter judgment in Taco Bell Corp.'s favor.

### 1. Online Advertising and Point-of-Purchase Advertising at the Green Brook Restaurant Are Incorporated by Reference in the Complaint

When considering this motion for judgment on the pleadings, the Court generally considers the allegations of the complaint to be true and will not look outside the pleadings except to the extent facts are judicially noticeable or particular documents are incorporated by reference in the complaint. Fed. R. Civ. P. 10(c). This Court "may consider an undisputedly

7

authentic document that a defendant attaches as an exhibit … if the plaintiff's claims are based on the document." *In re Burlington Coat Factory Securities Litig.*, 114 F.3d at 1426.

Plaintiffs' claims are expressly based on Taco Bell Corp.'s alleged "extensive advertising campaign on television, the internet and print." Plaintiffs allege they visited the Green Brook Restaurant to "dine-in." Compl. ¶ 10. At the time of Plaintiffs' alleged purchase, the Green Brook Restaurant displayed point-of-purchase print advertising that clearly indicated the $5.99 price for Chalupa Cravings Boxes at that location. Gebhardt Decl. ¶ 5. Since they say they visited the Green Brook Restaurant to dine-in, Plaintiffs were necessarily exposed to these in-store advertisements displayed at the point of purchase.

And by alleging Taco Bell's advertising campaign occurred in part "on … the internet," Compl. ¶ 8, Plaintiffs also incorporate Taco Bell Corp.'s primary form of online advertising: TacoBell.com. Even if Plaintiffs do not specifically allege that they visited or relied on this website, their allegations encompass the website, which was available and accessible to them.

This Court recently applied the doctrine of incorporation by reference in a similar setting. In *Popejoy v. Sharp Electronics Corp.*, 2016 WL 3381229 (D.N.J. June 9, 2016), this Court considered portions of Sharp's website in dismissing plaintiffs' complaint "because Plaintiffs rel[ied] upon Sharp's representations 'on the internet' in framing the allegations of their FAC. *Id.* at *3. This Court recognized that plaintiffs should not be permitted to draft their allegations to avoid unhelpful facts that would serve to undermine their claims, and in *Popejoy* it considered and relied upon two portions of the Sharp website even though they were not expressly described in, or attached to, the operative complaint. *See id.* at *4. For the same reasons, it is appropriate for this Court to consider and rely upon other components of Taco Bell Corp.'s "extensive advertising campaign on television, the internet and print," in addition to the one TV commercial

they describe in detail. In particular, this Court should consider the in-store advertising that Plaintiffs allege they were exposed to, *see* Compl. ¶¶ 8, 22, as well as the relevant portions of the TacoBell.com website. *See* App'x B. These materials are incorporated by reference in the Complaint and are proper subjects for this Court to rely on in deciding this Motion.

        2.      **Clear Disclosures of the Price at the Point of Purchase and Online Foreclose Plaintiffs' Claims of Reasonable Reliance and Harm**

Regardless of what Plaintiffs claim they believed about the price of a Chalupa Cravings Box after allegedly viewing the "Librarian" ad, they could not have completed their alleged purchase without being put on notice that the Green Brook Restaurant charged $5.99 for that menu item. Point-of-purchase advertising at the Green Brook Restaurant plainly disclosed the price at that location, as did displays on the cash register. Gebhardt Decl. ¶ 5. Plaintiffs fail to state a claim for consumer fraud where they affirmatively chose to buy a menu item—and even paid extra for substitutions[4]—after being put on notice that the Chalupa Cravings Box was not being offered for $5 at the restaurant they chose to visit.

What's more, Plaintiffs never had to leave home to ascertain the price they would be charged for Chalupa Cravings Boxes at the Green Brook Restaurant. Had they visited the Taco Bell website and selected that restaurant, they would have seen the full menu for the Green Brook Restaurant along with prices for each item. (*See* App'x B.) Any reasonable consumer who wanted to know the prices at the Green Brook Restaurant could have confirmed the pricing online to determine if it was participating in the $5 Chalupa Cravings Box offer.

---

[4] The Complaint omits the fact of this substitution and incorrectly states the amount that Plaintiffs were allegedly overcharged. *See* Compl. ¶ 11 (alleging Plaintiffs were charged $12.18 for two Chalupa Cravings Boxes); *id.* ¶ 19 (alleging Plaintiffs' ascertainable loss of $2.18). Their receipt makes clear that the base price for Plaintiffs' Chalupa Cravings Boxes was $5.99; Plaintiffs do not allege the $0.10 charge for their voluntary substitution of soft tacos was in any way fraudulent or deceptive. *See* App'x C.

9

*Killeen v. McDonald's Corp.*, 317 F. Supp. 3d 1012 (N.D. Ill. 2018), is instructive. In that case, a consumer brought claims against McDonald's under the Illinois Consumer Fraud and Deceptive Business Practices Act based on allegations that some combo meals on the "Extra Value Meal" menu actually cost less when the items were purchased individually. *Id.* at 1013. The plaintiff alleged that, after seeing advertising that suggested the combo meals were "a value," she purchased an Extra Value Meal even though she could have potentially saved $0.11 by purchasing the items in that meal à la carte. *Id.* The Court granted McDonald's' motion to dismiss, finding there was "no possibility for deception" because the prices for each menu item were displayed at the point of purchase. *See id.* "Indeed, anyone familiar with fast-food restaurants such as McDonald's surely knows that prices are typically displayed on menus located near the registers." *Id.* The court reasoned that "a straightforward, price-to-price comparison based on information available at the point of purchase would unequivocally dispel any misleading inference that could be drawn from" McDonald's' advertising. *Id.* at 1014. That comparison is even more straightforward in this case, as information at the point of purchase would have unequivocally dispelled any mistaken belief that the promotional $5 price for Chalupa Cravings Boxes was available at the Green Brook Restaurant. A reasonable consumer would simply not have been deceived under the facts alleged in the Complaint.

Other courts have recognized that plaintiffs do not state a claim for consumer fraud where they attempt to "bypass or otherwise avoid the multiple disclosures" at the point of purchase. For instance, in *Freeman v. Priceline.com, Inc.*, 2013 WL 5946069 (Cal. Ct. App. 2013), the court granted summary judgment on consumer protection claims brought by a plaintiff who alleged he had booked a hotel room on Priceline.com using the site's "Name Your Own Price" feature. *Id.* at *1. The plaintiff claimed that, based on "some ads" he saw, Priceline had fraudulently omitted

10

that the hotel price he selected was exclusive of additional fees charged by Priceline for its service or "resort fees" charged by the hotel. *Id.* at \*3. The court held that no reasonable consumer would be misled by Priceline's ads because the website included multiple disclosures about the possibility of additional fees. *Id.* at \*6–7. The court held that any omission in the advertisement "was immaterial in view of the undisputed [fact that] a Priceline customer would necessarily receive the multiple disclosures contained on Priceline's Web site before making a reservation." *Id.* at \*7. And in *Holt v. Noble House Hotels & Resort, Ltd.*, 370 F. Supp. 3d 1158 (S.D. Cal. 2019), the court concluded as a matter of law that a reasonable consumer would not be misled by the restaurant's practice of listing menu prices exclusive of a surcharge, where that surcharge was disclosed on the menu itself, on several signs throughout the property, and on each patron's bill. *Id.* at 1169. The court held that a reasonable consumer would not be misled "by the promotion as a whole." *Id.* at 1167–68.

This Court has made similar holdings, including in cases under the New Jersey CFA. In *Popejoy*, this Court dismissed the complaint with prejudice where Sharp's webpage contained "a clear disclosure" that dispelled any alleged confusion from statements made in other marketing materials. *See Popejoy*, 2016 WL 3381229 at \*4. And in *Ciser v. Nestle Waters North America, Inc.*, 2013 WL 5774121 (D.N.J. 2013), this Court dismissed plaintiff's claim that Nestle fraudulently omitted information about late charges, finding that the plaintiff "cannot plausibly allege that Nestle acted in a misleading fashion" where Nestle had disclosed on its website and on invoices that it could charge late fees. *Id.* at \*5–6. Here, Plaintiffs have not plausibly alleged unconscionable, fraudulent, or misleading conduct on Taco Bell's part where the "Librarian" commercial indicated that the $5 promotional price was only "at participating locations," and where the Taco Bell restaurant they visited clearly disclosed that it was *not* offering the $5 price.

11

When the alleged circumstances of Plaintiffs' transaction are considered as a whole, as they must be here, there is no possibility that a reasonable consumer would have been misled. Plaintiffs received multiple disclosures of the $5.99 price before completing their purchase of Chalupa Cravings Boxes—via the "Librarian" ad, online, and at the point of purchase. On these facts, Taco Bell Corp.'s Chalupa Cravings Box promotion was not misleading as a matter of law. In fact, even less effort and sophistication were required of Plaintiffs here than in *Killeen*, where the plaintiff would have had to manually calculate the prices of individual menu items to determine the true value of the "Extra Value Meal." *Killeen*, 317 F. Supp. 3d at 1013. No such arithmetic was required here. Instead, a cursory glance at the in-store advertisements for the Chalupa Cravings Box—or on the display on the cash register, or on the credit card reader—would have informed Plaintiffs of the price of that item at the Green Brook Restaurant. Gebhardt Decl. ¶ 5 & Ex. A.

The facts as alleged show that Plaintiffs were on notice of the $5.99 price of a Chalupa Cravings Box at the Green Brook Restaurant, yet decided to make the purchase anyway, including the $0.20 substitution for two soft-shell tacos. Plaintiffs did not reasonably rely on any misleading inference they claim could be drawn from the "Librarian" ad, and they could not have been injured by any of the accurate information conveyed in that ad, which did not contradict any information Plaintiffs received at the Green Brook Restaurant. *Gennari*, 288 N.J. Super. at 535; *N.J. Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 15–16 (N.J. App. Div. 2003) (affirming dismissal of consumer fraud lawsuit where no causal nexus was alleged between the allegedly misleading advertisement and the plaintiffs' purchases). Taco Bell Corp. is entitled to judgment on the pleadings because even if Plaintiffs have adequately alleged that Taco Bell Corp.'s "Librarian" advertisement had the tendency to mislead a reasonable consumer

12

(they have not), the website and the point-of-purchase information at the Green Brook location dispelled any such purported tendency.

### B. The "Librarian" Ad Is Not Misleading to a Reasonable Consumer as a Matter of Law

Even if the many price disclosures that Plaintiffs would have seen under the alleged facts are ignored, Plaintiffs do not plausibly allege that the ad they saw was unlawful or unconscionable. Plaintiffs identify one 30-second television advertisement for the Chalupa Cravings Box called the "Librarian," which they allege "induce[d] them to travel … to a Taco Bell restaurant … to specifically purchase two Chalupa Cravings Boxes." Compl. ¶¶ 9, 10. In pertinent part, the final five seconds of this TV commercial show the text "$5 Chalupa Cravings Box," with additional text disclosing that the $5 promotional price was "[a]t participating locations for a limited time" and that "[p]rices may vary." App'x A (screen shot of "Librarian" TV spot); *see also* Compl. ¶ 16. Plaintiffs allege they were charged $0.99 cents more per Box at the Green Brook Restaurant. Compl. ¶ 12 & App'x C.

To begin with, Plaintiffs do not allege that the information presented in the "Librarian" ad was false, that is, they do not allege the promotional $5 price was not available at any Taco Bell restaurant. As the ad states, the promotional price was available "at participating locations." Plaintiffs allege that they were charged more than $5 at the particular Taco Bell restaurant they chose to visit, but they acknowledge that location was *not* participating in the promotion. Compl. ¶¶ 11–13. The reason the "Librarian" ad was "inaccurate" and "misleading," according to Plaintiffs, was because it "intentionally suppressed and/or hid material information" that they *concede* was contained in what they call the "legal fine print." *Id.* ¶¶ 20, 23, 70.

13

Plaintiffs allege the advertisement constitutes a "per se violation" of the NJ CFA because it violates New Jersey Administrative Code 13:45A–9.2(a)(5).[5] Compl. ¶¶ 16, 23, 49. But nothing about the "Librarian" ad violates the Administrative Code. Section 13:45A-9.2 sets forth general advertising standards and explicitly acknowledges that disclaimers may be used in ads, along with the principle that disclaimers should be "clear and conspicuous relative to the other type sizes and styles." N.J. Admin. Code § 13:45A-9.2(a)(5). It is expressly prohibited to use the "type, size, location, lighting, illustration, graphic depiction, or color" to "obscur[e]" information in such disclaimers. *Id.* No information is obscured in the "Librarian" ad: the disclaimer text is visible, legible, and located exactly where and when consumers expect to see qualifying information about price promotions. *See* App'x A. Although Plaintiffs allege the "participating locations only" and "prices may vary" disclosures are "portrayed in a light white color against a light grey background," the white text of these disclaimers in fact appears over a *dark gray* background as is readily visible. *Compare* Compl. ¶ 54, *with* App'x A.

Plaintiffs have not alleged a "per se" violation of the New Jersey CFA because they do not allege a disclaimer that has been "obscured" by the size, location, or color of the text. Nor have Plaintiffs alleged the existence of any advertisement that would be "misleading to the average consumer." *Barry v. Arrow Pontiac, Inc.*, 100 N.J. 57, 69 (1985) (advertisement not subject to specific rule may be unlawful if misleading to reasonable consumer). It is commonplace for TV advertisements to contain some kind of qualifying disclaimers in the closing seconds of the commercial. While Plaintiffs allege this text is on-screen for "only 3 seconds of the 30 second television commercial," that is incorrect. Compl. ¶ 52. First, while the

---

[5] Plaintiffs further allege that Defendant's conduct "also constitutes a violation of N.J.S.A. 2C:21-8," Compl. ¶ 60, which concerns misrepresentations of odometer readings in the sale of a used vehicle. This conclusory statement is unsupported by any factual allegations that Defendant ever attempted to sell a used car in New Jersey.

14

entire "Librarian" ad lasts a total of 30 seconds, any "$5" mention or text representation only appears on-screen for, at most, 10 seconds of the 30-second ad. Second, the disclaimer actually appears on-screen for 5 full seconds—which is more than adequate time for a reasonable consumer to read three words that make clear the promotional $5 price is available only "at participating locations." *Compare* Compl. ¶ 52, *with* App'x A. *See In re Burlington Coat Factory Securities Litig.*, 114 F.3d at 1426 (explaining that courts may examine documents relied upon in the complaint where it would be clear that the allegedly fraudulent statement was not fraudulent if the statement were examined in the full context of the document). Thus, the disclaimer text is not only clearly visible, but proportionate to the amount of time the $5 price point is represented on-screen.

Just as "anyone familiar with fast-food restaurants … surely knows that prices are typically displayed on menus located near the registers," *Killeen*, 317 F. Supp. 3d at 1013, anyone familiar with TV ads for consumer products knows that these disclaimers are often presented at the end of the ad, toward the bottom of the screen. The disclaimer in the "Librarian" ad was clear and simple, and front-loaded the most important information to the average consumer: "At participating locations for a limited time. Prices may vary. Tax extra." *See* App'x A. Any reasonable consumer viewing this advertisement would not understand it to mean that the $5 promotional price is available at all Taco Bell locations; to the contrary, a reasonable consumer would understand that the ad means what it says: not all Taco Bell restaurants will offer the $5 promotional price. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (a reasonable consumer is expected not to ignore qualifying language that "appears immediately next to the representations it qualifies").

V. **CONCLUSION**

For the foregoing reasons, this Court should enter judgment in Taco Bell Corp.'s favor.

15

| | |
|---|---|
| Dated: December 27, 2019 | O'MELVENY & MYERS LLP |

By: <u>*/s/* Allen Burton</u>
ALLEN BURTON (NJ Bar #020742001)
aburton@omm.com
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Phone: (212) 326-2067
Facsimile: (212) 326-2061

*Attorney for Defendant
Taco Bell Corp.*