IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NELSON ESTRELLA-ROSALES and JOANN ESTRELLA, individually and as husband/wife<br><br>Plaintiffs,<br><br>v.<br><br>TACO BELL CORPORATION,<br><br>Defendants. | Case No. 2:19-cv-18192-WJM-MF |

---

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

---

Matthew Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway | Suite 207
Roseland, New Jersey 07068
Telephone: (973) 228-9898
Facsimile: (973) 228-0303

Douglas S. Schwartz
**SISSELMAN & SCHWARTZ, LLP**
75 Livingston Avenue | Suite 302
Roseland, New Jersey 07068
Telephone: (973) 533-0770
Facsimile: (973) 533-0780

*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... ii

I.    PRELIMINARY STATEMENT ........................................................................1

II.   STATEMENT OF FACTS ................................................................................3

III.  LEGAL STANDARD........................................................................................5

IV.   ARGUMENT.....................................................................................................5

    A.   Plaintiffs Adequately Allege a NJCFA Violation.............................................5

    B.   The Extraneous Documents Relied Upon by Defendant
        Should not be Considered ................................................................................7

    C.   A Reasonable Consumer Would be Misled by Defendant's Conduct ...........................9

        1.   Defendant's Website ................................................................................9

        2.   Alleged Point of Sale Disclosures.........................................................11

        3.   Whether a Reasonable Consumer Would be Misled by Defendant's
            Advertising Is a Question of Fact for the Jury.........................................12

V.    CONCLUSION................................................................................................14

CERTIFICATE OF SERVICE ..................................................................................15

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Allah v. Al–Hafeez*, 226 F.3d 247 (3d Cir. 2000) .......................................5

*Chattin v. Cape May Greene, Inc.,* 216 N.J. Super. 618 (App. Div.),
*certif. denied*, 107 N.J. 148 (1987) ...............................................13

*Ciser v. Nestle Waters North America, Inc.*, 2013 WL 5774121 (D.N.J. 2013)...........................12

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ...................................8,9

*Leon v. Rite Aid Corp.*, 340 N.J. Super. 462 (App. Div. 2001)........................................13

*Liggon-Redding v. Generations, Interstate, Harvest House APT,*
2015 WL 3991148 (D.N.J. June 30, 2015).................................................8

*Miller v. Am. Family Publishers*, 284 N.J. Super. 67 (Ch. Div. 1995).........................................13

*Oshinsky v. New York Football Giants, Inc.*, 2009 WL 4120237 (D.N.J. Nov. 17, 2009)...........................9

*Perez v. Wells Fargo N.A.*, 774 F.3d 1329 (11th Cir. 2014).........................................5

*Popejoy v. Sharp Electronics Corp.*, 2016 WL 3381229 (D.N.J. June 9, 2016) .............................8,12

*Ransom v. Marrazzo*, 848 F.2d 398 (3d Cir. 1988) ...........................................5

*Revell v. Port Auth. of NY, NJ*, 598 F.3d 128 (3d Cir. 2010)........................................5

*Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214 (3d Cir. 2005) ........................................5

*Smajlaj v. Campbell Soup Co.*, 782 F. Supp.2d 84 (D.N.J. 2011).........................................14

*Stewart v. Smart Balance, Inc.*, 2012 WL 4168584 (D.N.J. June 26, 2012)...................................13

*Syncsort Inc. v. Sequential Software, Inc.*, 50 F.Supp.2d 318 (D.N.J. 1999) ...............................5

*Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107 (D.N.J. 2002)...........................................13

*Union Ink Co., Inc. v. AT&T Corp.*, 352 N.J. Super. 617 (App. Div. 2002) ...............................13

*United States v. Gertsman*, 2016 WL 4154916 (D.N.J. Aug. 4, 2016) .......................................10

**<u>Rules/Other</u>**

N.J.A.C. 13:45A-9.2(a)(5) ..........................................................................................................*passim*

N.J.S.A. 56:8-1.............................................................................................................................1,4

Fed. R. Civ. P. 408.......................................................................................................................4

## I. **PRELIMINARY STATEMENT**

Defendant, Taco Bell seeks dismissal of Plaintiffs' consumer fraud claims relating to Taco Bell's false and misleading advertisement referred to as the "Librarian" television commercial.  Specifically, Taco Bell argues that the Librarian commercial was not misleading and comports with N.J.A.C. 13:45A-9.2(a)(5), which states in pertinent part as follows:

> a) Without limiting the application of N.J.S.A. 56:8-1 et seq., the following practices shall be unlawful with respect to all advertisements:
>
> 5) The use of any type, size, location, lighting, illustration, graphic depiction or color resulting in the obscuring of any material fact. Disclaimers permitted or required under this section, such as "terms and conditions apply" and "quantities limited," shall be set forth in a type size and style that is clear and conspicuous relative to the other type sizes and styles used in the advertisement.

Plaintiffs maintain that they establish a prima facie cause of action related to Defendant's numerous violations of N.J.A.C. 13:45A-9.2(a)(5) by utilizing disclaimers ["prices may vary" and "at participating restaurants"] at the bottom of the screen that are $1/16^{th}$ the height and $1/24^{th}$ the width of the material $5 price inducement.  Thus, Taco Bell utilized a type set for its disclaimers which violates the requirement that disclaimers "shall be set forth in a type size and style that is clear and conspicuous relative to the other type sizes and styles used in the advertisement."

The Librarian commercial also violates N.J.A.C. 13:45A-9.2(a)(5) by offering the material price inducement of $5 by prominently displaying the price throughout the 30 second television commercial in the middle of the viewing screen while the price disclaimer, is visible for a few seconds of the 30 second television commercial at the bottom of the screen. Finally, the Librarian commercial violates the Code by displaying the material price designation of $5 in gold lettering against a dark background, while the price disclaimer is intentionally obscured

to the viewer in white lettering against a grey background.   Thus, Defendant also violated the Code in its use of "location, lighting, illustration, graphic depiction or color resulting in the obscuring of any material fact."

This purposeful and fraudulent conduct by Taco Bell was designed to mislead reasonable consumers, like the Plaintiffs, and induce them to travel to Taco Bell restaurants based on the belief that they could obtain the Chalupa Cravings Boxes for $5 as advertised. And Taco Bell's scheme was successful.   As a result of viewing Taco Bell's Librarian television commercial, the Plaintiffs travelled to their nearest Taco Bell restaurant and ordered two of the advertised Chalupa Cravings Boxes. Contrary to Taco Bell's assertions, the Plaintiffs were not aware, nor could they be aware without first visiting the location, that the location they visited was not a "participating restaurant."   Also contrary to the Taco Bell's assertions, the Plaintiffs did not utilize the internet and were not aware that they had been overcharged until after the transaction had been completed and they received the register receipt. At that point the Plaintiffs immediately brought the price issue to the attention of the manager in charge. As a result of Defendant's fraudulent conduct Plaintiffs sustained an ascertainable loss.

On its face, Defendant's Librarian television commercial clearly violates N.J.A.C. 13:45A-9.2(a)(5) and any argument to the contrary that Defendant complied with its requirements for material disclaimers creates a factual dispute of a material issue. Accordingly, at this juncture of the proceedings, with all favorable inferences to the non-moving party, Defendant's motion for judgment on the pleadings must be denied.

## II. <u>STATEMENT OF FACTS</u>

In May 2018, Taco Bell engaged in an advertising campaign to promote the sale of its "Cravings Boxes" to the public for the price of $5.00.  Complaint, ECF No. 1, Attachment 1 ("Compl."), ¶ 8. In May 2018, Plaintiffs viewed Defendant's thirty-second television commercial commonly referred to as "The Librarian," which clearly and unambiguously offered for sale to the public, Chalupa Cravings Boxes for $5.00. *Id*., ¶ 9. By viewing this television commercial, Plaintiffs were induced to travel in their personal automobile to a Taco Bell restaurant located at 225-227 US Highway 22 Green Brook, New Jersey at approximately 8 p.m. to specifically purchase two Chalupa Cravings Boxes.  *Id*., ¶ 10.

Plaintiffs entered the Taco Bell restaurant and ordered two Chalupa Cravings Boxes, for which they were provided with a cash register receipt charging $12.99, inclusive of $0.81 of N.J. sales tax, for the purchase of the two "$5 Chalupa Cravings Boxes." *Id*., ¶ 12.  After the sales receipt was handed to the Plaintiffs, they confronted the restaurant's manager and questioned why they were charged $12.18 for two $5.00 Cravings Boxes that should have cost $10.00.  *Id*., ¶ 13.  Plaintiffs were told that the subject Taco Bell restaurant did not have to charge what was advertised and they were "covered with the legal fine print" in their advertising. *Id*.

Defendant knew or should have known that the Librarian television advertising would be viewed by members of the public including the Plaintiffs and/or other prospective purchasers. *Id*., ¶ 14.  Defendant expected the Librarian television commercial to reach consumers, like the Plaintiffs, and be an inducement to travel to and purchase the Defendant's Cravings Boxes.  *Id*., ¶ 15.  Defendant included in the advertising campaign, a disclaimer that stated that "prices may vary" and "at participating locations," which violated New Jersey Administrative Code N.J.A.C. 13:45A–9.2(a)(5) and constituted a *per se* violation of the New Jersey Consumer Fraud Statute

3

N.J.S.A. 56:8-1 *et seq*. *Id*., ¶ 16.  Defendant knew or should have known that the $5 price of the Cravings Boxes was a material issue for the Plaintiffs and other similarly situated consumers, and that the $5 advertised price of the Cravings Boxes could not be negated with the use of legal fine print set forth in a type size and style that was unclear and inconspicuous relative to the other type sizes and styles used in the advertisement.  *Id*., ¶¶ 17-18.

As a result, Plaintiffs reasonably relied on this false and misleading advertisement causing ascertainable losses in the form of time wasted driving to the subject Taco Bell, the gasoline expended to drive their vehicle to the subject Taco Bell, and in the amount of $2.18, which is the difference between what they should have been charged ($10.00 before taxes) and what they were charged ($12.18 before taxes).  *Id*., ¶ 19.  Prior to filing suit, Plaintiffs served Defendant with a demand to be made whole and cease their deceptive and fraudulent marketing campaign, but Taco Bell failed to comply with said demand.[1]

Accordingly, Plaintiffs filed a lawsuit against Defendant in the Superior Court of New Jersey alleging violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* ("NJCFA") (Count I) and commission of common law and equitable fraud (Count II)[2].  In

---

[1] After filing suit Plaintiffs advised Defendant that they remain willing to engage in settlement discussions as long as any potential settlement includes injunctive relief that addresses Taco Bell's alleged ongoing misrepresentations in its marketing campaigns.  Doc. No. 12, § II.A.1.  On November 12, 2019, Defendant advised that it was "considering Plaintiff's offer to enter into settlement discussions."  *Id*.  To date, Defendant has not provided any further response.  Plaintiffs recognize that Fed. R. Civ. P. 408 generally precludes the use of settlement communications to prove or disprove the validity or amount of a disputed claim.  However, because Defendant elected to include references to settlement discussions conducted pre-suit in its motion -- despite their complete irrelevance to Defendant's arguments -- Plaintiffs wanted the Court to have a complete understanding of the status of such settlement discussions.

[2] Defendant's motion does not provide any analysis regarding why Plaintiff's common law fraud claim should be dismissed and therefore Defendant is not entitled to judgment on that claim.

response, Defendant elected to remove this matter to Federal Court based upon defense counsel's sworn statement that the amount in controversy exceeds $75,000.  Doc. No. 1.

### III.   LEGAL STANDARD

"A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth. of NY, NJ*, 598 F.3d 128, 134 (3d Cir. 2010).  A motion for judgment on the pleadings should only be granted if the movant establishes that "there are no material issues of fact, and [the movant] is entitled to judgment as a matter of law."  *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005).  In considering a motion for judgment on the pleadings, a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party. *Allah v. Al–Hafeez*, 226 F.3d 247, 249 (3d Cir. 2000). A complaint should not be dismissed unless it appears beyond doubt that "the facts alleged in the complaint, even if true, fail to support the claim."  *Syncsort Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318, 325 (D.N.J. 1999)(citing *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988)).  Judgment on the pleadings should not be granted unless "there are no material facts in dispute and the moving party is entitled to judgment as a matter of law."  *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).

### IV.   ARGUMENT

#### A.   Plaintiffs Adequately Allege a NJCFA Violation

Plaintiffs allege that Taco Bell's Librarian commercial violated the NJCFA.  Specifically, it is a *per se* violation of the NJCFA to use **"any type, size, location, lighting, illustration, graphic depiction or color resulting in the obscuring of any material fact**."  N.J.A.C. 13:45 A –9.2(a)(5) (emphasis added). "Disclaimers permitted or required under this section, such as

'terms and conditions apply' and 'quantities limited,' **shall be set forth in a type size and style that is clear and conspicuous relative to the other type sizes and styles used in the advertisement."** *Id.* (emphasis added.)  Here, Defendant unlawfully obscured a material fact (the price and availability of the product) by utilizing a disclaimer with a type size, style and placement that was not clear and conspicuous relative to the other price offering in the advertisement, violating the N.J.A.C. 13:45 A –9.2(a)(5) and the NJCFA.  A screenshot of the portion of the Librarian commercial where the disclaimer is displayed is below:



While Defendant argues that the disclaimer is "readily visible," one look at the above screenshot proves the falsity of that claim.  Defendants $5 price designation is set forth in the middle of the commercial advertisement in type print, that when printed on a standard 8.5" x 11" sheet of papers, measures 2 inches in height by 1.5 inches in width. Defendant's disclaimer is located at the bottom of the commercial advertisement in type print 1/8 of an inch in height by 1/16 of an inch in width.  Defendant's intentional choice of type set for its price disclaimer is 1/16 the height and 1/24 the width of the size of the type set chosen for the $5 price inducement.

Additionally, Defendant's $5 price designation is prominently displayed throughout the 30 second television commercial and in the middle of the screen, while the "prices may vary," disclaimer is visible for only a few seconds.  Even more troubling, Defendant's $5 price designation is portrayed in bright yellow against a dark background while the disclaimer is portrayed in white against a light grey background, making it very difficult to see and not conspicuous "relative to the other type sizes and styles utilized in the advertisement." As a result of Defendant's improper conduct, Plaintiffs sustained an ascertainable loss as described above.

Plaintiffs have clearly and adequately alleged a violation of the NJCFA.

**B.  The Extraneous Documents Relied Upon by Defendant Should not be Considered**

In support of its motion, Defendant asks the Court to consider numerous extraneous materials that are not cited or relied upon in the Complaint and therefore should not be considered by the Court.  Specifically, Defendant argues that because Plaintiffs' Complaint states that "the defendants engaged in an extensive advertising campaign on television, the internet and print, advertising the sale of 'Cravings Boxes' to the public for the price of $5.00," the Court can rely on any documents that theoretically fall under those categories, despite Plaintiffs alleging that they only saw and relied on the Librarian commercial.  These unrelated documents include Defendant's alleged website, alleged point of purchase advertising and pre-suit letters between counsel.  Defendants also ask the Court to consider the Declaration of Steve Gebhardt (ECF No. 14-9, "Gebhardt Dec."), an employee of the franchisee who makes claims about the subject restaurant's alleged practices and advertising at the restaurant.  All of these documents are extraneous to the Complaint and the claims asserted because none are "integral to or expressly relied upon" by the Plaintiffs.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

In fact, the sole case cited by Defendant's in support of their assertion that these extraneous documents should be considered by the Court undercuts their argument. In *Popejoy v. Sharp Electronics Corp.*, 2016 WL 3381229 (D.N.J. June 9, 2016), the plaintiffs alleged that defendant committed fraud by falsely marketing, advertising, and deceptively labeling certain of its televisions as "LED TVs," when in fact they were LCD TVs backlit by LED lights. *Id.* at *1. In granting defendant's motion to dismiss, the Court considered disclosures on Defendant's website because Plaintiffs' Complaint relied upon representations made "on the internet" in framing the allegations of their Complaint and in fact, provided select portions of Defendant's website in their original Complaint. *Id.* at *3.

The facts here are the opposite. While Plaintiffs generally referenced Defendant's extensive marketing campaign, they unequivocally allege that the only thing they relied on in making their decision was the Librarian commercial. Compl. ¶¶ 9-13. Plaintiffs do not allege that they reviewed Defendant's website (or even that they knew about it prior to the purchase). Plaintiffs also do not allege that they saw any point of purchase advertising or prices being displayed in any other places (other than their receipt) prior to their purchase. Quite the opposite in fact, Plaintiffs alleged that it was not until they received the receipt from their purchase that they realized that they had been overcharged and questioned the restaurant's management about it. Clearly, such extraneous documents are not "integral" to the Complaint and Plaintiffs' claims do not in any way rely on these additional documents or facts. *Popejoy*, 2016 WL 3381229 at *3; *see also*, *Liggon-Redding v. Generations, Interstate, Harvest House APT*, 2015 WL 3991148, at *4 (D.N.J. June 30, 2015) (rejecting consideration of a Declaration submitted in support of a motion to dismiss because the facts asserted therein were not integral to the complaint); *Oshinsky v. New York Football Giants, Inc.*, 2009 WL 4120237, at *4 (D.N.J. Nov. 17, 2009) (rejecting

consideration of newspaper articles attached to a declaration submitted in support of a motion to dismiss because consideration of such materials "at this juncture would unfairly prejudice Plaintiff, who does not yet have the benefit of discovery").

Accordingly, based on the Court's reasoning set forth in *In re Burlington Coat Factory Sec. Litig.* and its progeny, it would not be appropriate to consider anything beyond the Complaint and the Librarian commercial, and the additional materials should be stricken. If the Court does consider these extraneous materials, Defendant's motion must be converted to a motion for summary judgment.

### C.  A Reasonable Consumer Would be Misled by Defendant's Conduct

Defendant argues that "Plaintiffs have not plausibly alleged that a reasonable consumer would be misled by Taco Bell Corp.'s Chalupa Cravings Box promotion."  Def. Br. at Pg. 6. In support of this argument, Defendant asserts that the Court must consider not only the Librarian commercial, but also the webpages attached to the "Appendix" as well as the Gebhardt Declaration, and when taken together, Plaintiffs could not have been misled.  Defendant is incorrect.

### 1.  Defendant's Website

While not explicitly discussed by Defendant in its motion, Plaintiffs allege that in addition to overpaying for the Chalupa Cravings Boxes, Plaintiffs also sustained an ascertainable loss "in the form of time wasted driving to the subject Taco Bell [and] the gasoline expended to drive their vehicle to the subject Taco Bell."  Compl. ¶ 19.  To avoid responsibility for these damages, Defendant argues that "Plaintiffs never had to leave home to ascertain the price they would be charged for Chalupa Cravings Boxes at the Green Brook Restaurant," they could have simply visited Defendant's website to view the prices. Def. Br. at Pg. 9.  This argument fails for several reasons.

First, for the reasons discussed above, Defendant's website was not relied on by the Plaintiffs or integral to the Plaintiffs' claims and therefore should not be considered on this motion.

Second, the alleged website pages are attached to Defendant's motion via an "Appendix." Notably, these alleged website pages are not attached to a Declaration from an individual with personal knowledge of their contents and who can verify what these webpages are.  For this reason alone, the documents included in the "Appendix" should be ignored.  *See United States v. Gertsman*, 2016 WL 4154916, at *4 (D.N.J. Aug. 4, 2016) (rejecting a request to consider documents attached to a motion to dismiss that were "unattested to and unauthenticated").

Third, these webpages are missing critical information that would confirm their relevancy.  Among other missing information, the attached pages (a) do not identify the webpage address, (b) do not identify the date these webpages were printed, and (c) do not indicate that these are the webpages that would have been present and accessible in May 2018.  *See* e.g., Def. Br. at Appendix B.  For all Plaintiffs know, these webpages were created the day before Defendant filed its motion.

Fourth, assuming the Court considers these extraneous, unattested to and unauthenticated webpages missing critical information, they *still* do not support Defendant's argument. Specifically, while the attached webpages include a myriad of Taco Bell offerings, they do not include a reference to the "Chalupa Cravings Box" that is at issue in this case.  *Id.*  The most similar item included in the attached webpages is the "Double Chalupa Box," and as the Court will note, the attachment indicates that this "[i]tem is not available at your selected restaurant." Thus, if Plaintiffs had reviewed the referenced webpages in May 2018, they would not have found any information about the pricing of the Chalupa Cravings Box.

Finally, and perhaps most significantly, Plaintiffs had no obligation to review Defendant's website prior to travelling to a Taco Bell restaurant and making a purchase. The Librarian commercial they watched did not tell them that they had to review the website for complete details or pricing information about the promotion. Plaintiffs, like all consumers, are entitled to take Defendant's at their word and expect that they can obtain a "Chalupa Cravings Box" for $5.00.

### 2. Alleged Point of Sale Disclosures

Defendant also seeks to demonstrate, through the Gebhardt Declaration, that Plaintiffs should have been on notice prior to purchase that the price being charged at the subject Taco Bell restaurant was more than the price advertised in the Librarian commercial. Once again, Defendant is incorrect.

First, for the reasons discussed above, the information set forth in the Gebhardt Declaration and its attachment was not relied on by the Plaintiffs or integral to the Plaintiffs' claims and therefore should not be considered on this motion.

Additionally, Plaintiffs have the right to test the veracity of the statements set forth in the Gebhardt Declaration and are not required to simply accept the assertions made as truthful or complete. For instance, Gebhardt claims that a point of purchase advertisement stating the price of the Chalupa Cravings Box was displayed in the subject restaurant. Plaintiffs are entitled to explore the assertions made by Gebhardt; information like where exactly the advertisement was displayed and whether it was obscured by any other information, when this advertisement was put up and when it was taken down, whether it was actually on display when the Plaintiffs made their purchase, whether the credit card readers would display item prices when customers like the Plaintiffs pay by cash, and other relevant information. Plaintiffs are also entitled to know why

Gebhardt's Declaration attached an alleged exemplar of the advertisement and not the actual advertisement allegedly placed in this restaurant. These are all questions of fact that are properly left for a jury to decide. If declarations of "no wrongdoing" by defendants were enough to result in dismissal of a complaint, no cases would ever proceed past the pleading stage.

Finally, even if Defendant is correct that Plaintiffs should have been put on notice of the actual price when they went into the restaurant, Plaintiffs had already sustained an ascertainable loss by travelling to the restaurant.

The cases relied upon by Defendant do not require a different result. As discussed above, *Popejoy* actually supports denial of Defendant's motion under the facts in this case. Likewise, *Ciser v. Nestle Waters North America, Inc*., 2013 WL 5774121 (D.N.J. 2013), is readily distinguishable from this case. In *Ciser*, the late fees at issue were disclosed on every bill that was sent to and indisputably reviewed by the plaintiff. *Id*. at *1-2. Thus, plaintiff knew exactly what he would be charged as a late fee if he failed to pay the bill on time. *Id*. at *5. Here on the other hand, the only representation made to and relied upon by the Plaintiffs was that they could purchase a Chalupa Cravings Box for $5, which turned out to be false.[3]

### 3. Whether a Reasonable Consumer Would be Misled by Defendant's Advertising Is a Question of Fact for the Jury

Defendant asks this Court to act as the jury and hold that a reasonable consumer would not be misled under these circumstances. Respectfully, that is not the Court's role. It is black-letter law that whether a statement has the capacity to mislead consumers is a question of fact for the jury. *See e.g., Leon v. Rite Aid Corp.*, 340 N.J. Super. 462 (App. Div. 2001) ("Indeed, a jury would appear especially well suited to determine the impact of an advertisement upon 'an

---

[3] The other cases cited by Defendant are from other Circuits and examine consumer protection laws from other States. As they have no bearing on the claims in this lawsuit and are not binding authority, they are not relevant to the Court's analysis.

average consumer.'"); *Chattin v. Cape May Greene, Inc.,* 216 N.J. Super. 618, 639 (App. Div.), *certif. denied*, 107 N.J. 148 (1987) ("the determination whether an advertisement is misleading is ordinarily for the trier of fact—here the jury—to decide."); *Union Ink Co., Inc. v. AT&T Corp.*, 352 N.J. Super. 617, 645 (App. Div. 2002) (noting that "[w]hether an advertisement is misleading presents a question of fact"); *Szczubelek v. Cendant Mortg. Corp*., 215 F.R.D. 107, 126 (D.N.J. 2002) (whether "actions or omissions constituted an unconscionable commercial practice because [Defendant's] disclosure has the capacity to mislead consumers…are clearly questions of fact for a jury to answer."); *Stewart v. Smart Balance, Inc.*, 2012 WL 4168584, at *9 (D.N.J. June 26, 2012) ( "[w]hether the labeling as a whole is misleading to an average consumer is a question of fact.")

Moreover, Defendant argues that because the Librarian commercial contained the disclaimer "at participating locations" -- albeit inconspicuous and virtually illegible -- it does not violate the NJCFA and reasonable consumers would not be misled.  Defendant is wrong on both accounts.

As discussed above, the way the disclaimer was displayed in the context of this commercial is a *per se* violation of the NJCFA. Additionally, the fact that the disclaimer is technically included in the commercial does not mean that it was not misleading.  "Even if an advertisement is literally true, it may be actionable if "the overall impression [it] create[s] ... is misleading and deceptive to an ordinary reader." *Union Ink*, 352 N.J. Super. at 644–45 (*citing Miller v. Am. Family Publishers*, 284 N.J. Super. 67, 74 (Ch. Div. 1995); *see also*, *Stewart v. Smart Balance, Inc.*, 2012 WL 4168584, at *9 (D.N.J. June 26, 2012) ("the fact that the labels were literally true does not mean that they cannot be misleading to the average consumer"); *Smajlaj v. Campbell Soup Co.*, 782 F. Supp.2d 84, 98 (D.N.J. 2011) (same).  Here, the way the

Librarian commercial is composed could clearly mislead reasonable consumers, like the Plaintiffs, into believing that they could get a Chalupa Cravings Box for $5 at Taco Bell restaurants.[4]

## V.    **CONCLUSION**

For the forgoing reasons, Defendant's motion for judgment on the pleadings should be denied.

Dated: January 21, 2020

By:    _____

Matthew Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway | Suite 207
Roseland, New Jersey 07068

Douglas S. Schwartz
**SISSELMAN & SCHWARTZ, LLP**
75 Livingston Avenue | Suite 302
Roseland, New Jersey 07068

*Attorneys for Plaintiffs*

---

[4] Moreover, even if the disclaimer was visible and prominently displayed, it still might have been false. Plaintiffs do not yet know whether there were *any* Taco Bell restaurants that actually offered the Chalupa Cravings Box for $5. Defendant's counsel has advised that its franchisees "are free to set their own price points for products as required under federal antitrust laws." Doc. No. 14-7 at PageID 159. Defendant has also advised through its answers to interrogatories that "Taco Bell Corp. does not own or operate any Taco Bell franchises." Accordingly, it is entirely possible that Taco Bell instituted the subject marketing campaign with the knowledge that it allegedly could not require its restaurants to actually offer the Chalupa Cravings Boxes for $5 and without knowing whether even a single restaurant would honor the $5 price. Thus, even with an appropriately displayed disclaimer, the Librarian commercial may still have been false. Again, this is a question of fact that can not be decided at this stage of the litigation.

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew Mendelsohn, hereby certify that the foregoing **PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL** was filed on January 21, 2020, using the Court's CM/ECF system, thereby electronically serving it on all counsel of record in this case.

By: _____
　　　　MATTHEW MENDELSOHN