O'MELVENY & MYERS LLP
ALLEN BURTON
aburton@omm.com
HANNAH CHANOINE (*pro hac vice*)
hchanoine@omm.com
7 Times Square
New York, New York 10036
Telephone:   (212) 326-2000
Facsimile:    (212) 326-2061

CARLOS M. LAZATIN (*pro hac vice*)
clazatin@omm.com
400 South Hope Street
Los Angeles, California 90071-2899
Telephone:   (213) 430-6000
Facsimile:    (213) 430-6407

*Attorney for Defendant*
*Taco Bell Corp.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| NELSON ESTRELLA-ROSALES and JOANN ESTRELLA, individually and as husband/wife | ) ) ) | **Case No. 2:19-cv-18192-WJM-MF** |
| | ) | |
| Plaintiffs, | ) ) ) | **REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| v. | ) ) | |
| TACO BELL CORPORATION; YUM! BRANDS INC.; ABC CORPORATION (1-10), and JOHN DOES 1-10 | ) ) ) ) | Motion Day:  February 3, 2020 |
| Defendants. | ) ) | |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.    PLAINTIFFS' ALLEGATIONS CONFIRM THAT THEY WERE ON NOTICE
OF THE PRICE CHARGED BY THE GREEN BROOK RESTAURANT .................... 2

    A.    Each of the Documents Filed with Taco Bell Corp.'s Motion Is "Integral
to" Plaintiffs' Complaint ................................................................... 3

    B.    Taco Bell Corp.'s Price Disclosures Negated Any Alleged Deception ................. 8

III.    THE "LIBRARIAN" AD IS NOT DECEPTIVE AS A MATTER OF LAW ............... 11

IV.    THIS COURT NEED NOT CONVERT TACO BELL CORP.'S MOTION INTO
A MOTION FOR SUMMARY JUDGMENT ................................................. 14

V.    CONCLUSION ........................................................................................ 15

# TABLE OF AUTHORITIES

Page

**Cases**

*Adamson v. Ortho-McNeil Pharmaceutical, Inc.*,
  463 F. Supp. 2d 496 (D.N.J. 2006) ......................................................................... 13

*Bosland v. Warnock Dodge, Inc.*,
  197 N.J. 543 (2009) ................................................................................................ 13

*Cal. Pub Emp. Retirement Sys. v. Chubb Corp.*,
  2002 WL 33934282 (D.N.J. June 26, 2002) ............................................................. 7

*Chattin v. Cape May Greene*,
  216 N.J. Super. 618 (App. Div. 1987) .............................................................. 11, 12

*Ciser v. Nestle Waters N. Am., Inc.*,
  2013 WL 5774121 (D.N.J. Oct. 24, 2013) .................................................... 6, 9, 14

*Crozier v. Johnson & Johnson Consumer Cos.*,
  901 F. Supp. 2d 494 (D.N.J. 2012) ......................................................................... 12

*Davis v. G.N. Mortg. Corp.*,
  396 F.3d 869 (7th Cir. 2005) .................................................................................... 5

*DeLuca v. Quicken Loans, Inc.*,
  2012 WL 13034194 (D.N.J. Apr. 30, 2012) ...................................................... 9, 14

*Dow v. Ind. Novelty Int'l*,
  2010 N.J. Super. Unpub. LEXIS 3317 (Aug. 27, 2010) ......................................... 12

*Forsatz v. The Contributorship Companies*,
  2005 WL 2704895 (D.N.J. Oct. 20, 2005) ............................................................. 15

*Freeman v. Priceline.com*,
  2013 WL 5946069 (Cal. Ct. App. 2013) ........................................................... 6, 10

*Gemini Restoration, Inc. v. Leone*,
  2012 N.J. Super. Unpub. LEXIS 1850 (App. Div. Aug. 3, 2012) ........................... 12

*Green v. Continental Rentals*,
  292 N.J. Super. 241 (1994) ..................................................................................... 12

*Hassler v. Sovereign Bank*,
  644 F. Supp. 2d 509 (D.N.J. 2009) ......................................................................... 13

## TABLE OF AUTHORITIES
(continued)

**Page**

*Holt v. Noble House Hotels & Resort, Ltd.*,
  370 F. Supp. 3d 1158 (S.D. Cal. 2019) ............................................................. 6, 10

*Huggard v. Crown Bank*,
  2012 WL 529548 (D.N.J. Feb. 17, 2012) ................................................................. 15

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) ...................................................................... 3, 4, 14

*In re Donald J. Trump Casino Sec. Litig.*,
  7 F.3d 357 (3d Cir. 1993) ............................................................................ 3

*Killeen v. McDonald's Corp.*,
  317 F. Supp. 3d 1012 (N.D. Ill. 2018) ................................................................ 9, 10

*Liggon-Redding v. Generations, Interstate, Harvest House APT*,
  2015 WL 3991148 (D.N.J. June 30, 2015) ................................................................. 7

*Onyx Acceptance Corp. v. Trump Hotel & Casino Resorts, Inc.*,
  2008 N.J. Super. Unpub. LEXIS 1095 (App. Div. Mar. 12, 2008) ......................................... 12

*Oshinsky v. N.Y. Football Giants, Inc.*,
  2009 WL 4120237 (D.N.J. Nov. 17, 2009) ............................................................... 7, 8

*Popejoy v. Sharp Elecs. Corp.*,
  2016 WL 3381229 (D.N.J. June 9, 2016) ............................................................ passim

*Rosendale Manor Assocs., LLP v. Borough of Madison*,
  2005 WL 8175461 (D.N.J. Mar. 11, 2005) ................................................................. 15

*United States v. Bansal*,
  663 F.3d 634 (3d Cir. 2011) ............................................................................ 7

*Williams v. Zhou*,
  2019 U.S. Dist. LEXIS 51961 (D.N.J. Mar. 27, 2019) ..................................................... 7

**Statutes**

Section 13:45A-9.2(a)(5) ................................................................................ 12

## I.     <u>INTRODUCTION</u>

Plaintiffs' articulated theory of deception requires consumers to don blinders and ignore key facts at multiple junctures. To follow Plaintiffs' explanation of how they were deceived or defrauded, one first must ignore the clear and conspicuous disclaimer in the "Librarian" ad they allege they saw, which clarifies that the $5 promotional price for Chalupa Cravings Boxes was available "at participating locations" only and that "prices may vary." After ignoring that information, one must make every effort to disregard the abundant information available about what price was charged for Chalupa Cravings Boxes at the Taco Bell restaurant in Green Brook, New Jersey (the "Green Brook Restaurant") that Plaintiffs allege they visited. Indeed, one must look away from the menu board itself, avert one's eyes from the cash register, and disregard anything the cashier says up until the moment she hands over the receipt—at which point, Plaintiffs contend, the fraud occurred. This not the behavior of a reasonable consumer, and Plaintiffs' claims under the New Jersey Consumer Fraud Act ("NJ CFA") and common law fail as a matter of law.

In opposition to Taco Bell Corp.'s motion for judgment on the pleadings ("Motion"), Plaintiffs attempt to manufacture "questions of fact" that they contend are improper to adjudicate at the pleadings stage. But the only dispositive facts here are those that Plaintiffs themselves allege and those set forth in documents that they admit "fall under th[e] categories" of advertising referenced in their complaint. It is both appropriate and necessary for this Court to consider those facts, all of which are incorporated by reference under Third Circuit law. Once the Court considers each element of the "extensive advertising campaign on television, the internet and print" alleged in the complaint, it becomes clear that Plaintiffs' allegations do not support a claim for consumer

fraud, whether under the NJ CFA or common law.[1]

But regardless of whether this Court considers those elements of the advertising campaign that Plaintiffs do not expressly describe in the complaint, the Court should grant the Motion based on the Librarian ad itself, which is indisputably part of the complaint. Plaintiffs do not dispute that the ad explicitly and truthfully states that "prices may vary" and that the promotional price of $5 is available only "at participating locations." And despite their focus on the relative font size of the words on screen, Plaintiffs do not contend this disclaimer is illegible or obscured—which is the applicable standard under the New Jersey Administrative Code. The "Librarian" ad is not fraudulent or deceptive as a matter of law, and this Court can and should enter judgment in Taco Bell Corp.'s favor on the basis of the "Librarian" ad alone.

## II.   PLAINTIFFS' ALLEGATIONS CONFIRM THAT THEY WERE ON NOTICE OF THE PRICE CHARGED BY THE GREEN BROOK RESTAURANT

As explained in Taco Bell Corp.'s Motion, the documents incorporated by reference in the complaint demonstrate that Plaintiffs have not adequately pleaded consumer fraud claims under either the NJ CFA or the common law. Plaintiffs' position—that these documents "should not be considered" because they are not incorporated in the complaint—is incorrect and unsupported by law. Third Circuit authority as well as this Court's own precedents establish that these are exactly the sort of documents that are "integral to" Plaintiffs' complaint and on which their claims are necessarily based. Those documents make abundantly clear that there was no fraud and that Plaintiffs here have no claim.

---

[1] In a footnote, Plaintiffs contend that Taco Bell Corp.'s Motion "does not provide any analysis regarding why Plaintiff's [sic] common law fraud claim should be dismissed." Opp. at 4 n.2. That is incorrect. The Motion explains the elements of common law fraud, Mot. at 6, and how Plaintiffs have failed to plausibly allege reasonable reliance on any misrepresentation, Mot. at 7, 9–13. The Motion discusses both common law fraud and deception under the NJ CFA in concert because Plaintiffs' fraud and NJ CFA claims fail for largely the same reasons.

**A.     Each of the Documents Filed with Taco Bell Corp.'s Motion Is "Integral to" Plaintiffs' Complaint**

Taco Bell Corp. submitted five categories of documents with its Motion that are incorporated by reference in Plaintiffs' complaint: (1) the "Librarian" ad Plaintiffs allege they saw, (2) the receipt for their alleged purchase, (3) the demand letters that Plaintiffs specifically allege they sent to Taco Bell Corp., (4) the in-store ads displayed at the Green Brook Restaurant during Plaintiffs' alleged visit, and (5) screenshots of Taco Bell's website showing that pricing information is available for virtually any Taco Bell location in the United States. Plaintiffs do not dispute the authenticity of the first two documents, nor do they contend those documents are not incorporated by reference in their complaint. And though Plaintiffs discuss their pre-suit demand letters alongside other documents they contend are not incorporated by reference, those letters are in fact expressly referenced in their complaint. *See* Compl. ¶ 33. Thus, there are only two categories of documents whose incorporation in the complaint Plaintiffs appear to dispute: the in-store print advertisements and the online advertisements on Taco Bell's website.

Plaintiffs contend that these documents "should not be considered" because "none are 'integral to or expressly relied upon' by the Plaintiffs." Opp. at 7 (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Plaintiffs maintain this is so because they "do not allege that they saw any point of purchase advertising," as "the only thing they relied on in making their decision was the Librarian commercial." Opp. at 8. But Plaintiffs misapprehend the standard for incorporation by reference in this Circuit. A court may consider a document if it is "integral to" the complaint or "if the plaintiff's claims are based on the document," regardless of whether the plaintiff explicitly mentions the document or claims to have subjectively relied on it in making his purchase. *Burlington Coat Factory*, 114 F.3d at 1425 (citing *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993)). As the Third Circuit explained in *Burlington*

*Coat Factory*, "what is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Id.*

Taco Bell's print advertising at the point-of-sale and its internet advertising clearly meet these standards. Whatever Plaintiffs may now argue in opposition to the Motion, their complaint makes clear that their claims are *expressly based* on Defendant's alleged "extensive advertising campaign on television, the internet and print," their purported "reasonabl[e] rel[iance]" on those "commercial advertisements," and their alleged visit to and purchase at the Green Brook Restaurant (where they were necessarily exposed to Taco Bell's in-store print advertising). Compl. ¶¶ 8, 10, 27. Indeed, Plaintiffs acknowledge that they "generally referenced Defendant's extensive advertising campaign" in the complaint, Opp. at 8, and appear to concede that the documents presented with Taco Bell's Motion "fall under th[e] categories" of television, internet, and print advertising referenced in the complaint, Opp. at 7. The documents attached to the Motion are part of the advertising campaign on which Plaintiffs' claims are based. It is therefore proper for the Court to consider the in-store advertisements and website.

In fact, the Third Circuit has been clear that plaintiffs should not be permitted to draft their way around key facts that undermine their claims. The whole point of the doctrine of incorporation by reference is "to prevent … the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent." *Burlington Coat Factory*, 114 F.3d at 1426. *That is exactly what happened here.* From a single TV ad, Plaintiffs have extracted and made an isolated statement about a "$5" offer the centerpiece of their complaint but conspicuously remained vague about the entirety of the ad or any of the print and internet advertising for the particular promotion they

allegedly viewed, which together demonstrate "the full context" of how the "$5" statement is not fraudulent at all. This is precisely the sort of pleading artifice *Burlington Coat Factory* was meant to address. This Court recognized as much in *Popejoy* when, citing *Burlington Coat Factory*, it found that various sections of the Sharp website were incorporated by reference, even though plaintiffs had only alleged reliance on statements made "on the internet," and not the particular webpages. *Popejoy v. Sharp Elecs. Corp.*, 2016 WL 3381229, at *3–4 (D.N.J. June 9, 2016).

Here, Plaintiffs allege they were deceived by an "extensive marketing campaign" conducted on TV, on the internet, and in print advertisements at Taco Bell restaurants like the Green Brook Restaurant. Compl. ¶ 8. They allege they "reasonably relied on [Taco Bell Corp.'s] … misrepresentations and/or omissions contained on its commercial advertisement**s**," *id.* ¶ 27, that is, they viewed and relied on more than one ad. Although they now claim they never looked at Taco Bell's website (a fact not alleged in the complaint), Plaintiffs *do* allege that they went inside the Green Brook Restaurant to order two Chalupa Cravings Boxes. *See* Compl. ¶¶ 10–13; Mot. App'x C. They thus allege exposure to all the in-store advertisements and other price disclosures for the Chalupa Cravings Box at the Green Brook Restaurant at the time of their purchase.

The case law on consumer fraud and deception makes clear that the validity of a plaintiff's claim is determined by the totality of the circumstances around the alleged transaction—and not just the parts of the transaction that a plaintiff subjectively found important or chose to emphasize in the complaint. *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005) (in consumer fraud claim, "the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff"). As Plaintiffs observe in their opposition, in *Popejoy*, this "Court considered disclosures on Defendant's website because Plaintiff's Complaint relied upon representations made 'on the internet'" in framing the allegations of their Complaint." Opp.

at 8. Likewise, here, Plaintiffs explicitly relied on Taco Bell's "extensive advertising campaign on television, the internet and print" in framing the allegations of *their* complaint. In fact, the case for incorporation by reference is even stronger here than for the Sharp website in *Popejoy*—the plaintiff there alleged exposure to unidentified statements "on the internet" but not to the specific disclosure identified by the Court. *See Popejoy*, 2016 WL 3381229, at *3. This case is more like *Ciser*, where it was undisputed that disclosures were printed on invoices that the plaintiff admitted he received. *See Ciser v. Nestle Waters N. Am., Inc.*, 2013 WL 5774121, at *5 (D.N.J. Oct. 24, 2013) ("While Ciser maintains that Nestle's bills were confusing, and while Ciser maintains that there was an inconsistency between Nestle's website and its invoices, it is a fact that Nestle disclosed that it might charge $15 late fees."); *see also Freeman v. Priceline.com*, 2013 WL 5946069, at *6–7 (Cal. Ct. App. 2013) (allegedly deceptive TV ad evaluated in light of disclosures on defendant's website); *Holt v. Noble House Hotels & Resort, Ltd.*, 370 F. Supp. 3d 1158 (S.D. Cal. 2019) (allegedly deceptive restaurant menu evaluated in light of disclosures on menu and elsewhere). The Gebhardt Declaration establishes that the in-store advertisement submitted with Taco Bell Corp.'s Motion was displayed at the Green Brook Restaurant when Plaintiffs allege they visited it. In that sense, the in-store ad is like the disclosure on the Nestle invoice—Plaintiffs allege they were exposed to it, and their claims are necessarily based on it. Both the website screenshots and the in-store advertisement are proper for this Court to consider in deciding this Motion.

Plaintiffs' objection that these documents were not authenticated by a witness is unfounded. First, Steve Gebhardt *did* authenticate the in-store advertisement and confirmed that advertisement was in the Green Brook Restaurant at the time that Plaintiffs allege they visited that location. *See* Gebhardt Decl. ¶¶ 3–5. Plaintiffs also contend they did not rely on this advertisement, Opp. at 11, but they do not deny that it was displayed at the Green Brook Restaurant. "[A] plaintiff

cannot defeat consideration of a[n] integral document on a motion to dismiss unless it can offer a factual basis questioning its authenticity." *See Oshinsky v. N.Y. Football Giants, Inc.*, 2009 WL 4120237, at *3 (D.N.J. Nov. 17, 2009) (citing *Cal. Pub Emp. Retirement Sys. v. Chubb Corp.*, 2002 WL 33934282, at *3 (D.N.J. June 26, 2002)). Apart from claiming a "right to test the veracity" of the Gebhardt Declaration, Plaintiffs offer no reason to doubt that the in-store advertisement attached to the Gebhardt Declaration was displayed at the Green Brook Restaurant when they were there. As for the website screenshots, *see* App'x B, again, Plaintiffs offer no factual basis to question the authenticity of these webpage print-outs and do not dispute that the functionality of the Taco Bell website was substantially the same at the time of their alleged purchase. In any event, the Wayback Machine's archives readily confirm that such functionality was available during the relevant time period.[2] There is nothing preventing this Court from considering the documents filed along with Taco Bell Corp.'s Motion.

Plaintiffs' reliance on *Liggon-Reading* and *Oshinsky* is misplaced. In *Liggon-Redding*, the court declined to consider a declaration submitted by the defendants because they "made no argument for why it should be considered." *Liggon-Redding v. Generations, Interstate, Harvest House APT*, 2015 WL 3991148, at *4 n.6 (D.N.J. June 30, 2015). By contrast, Taco Bell Corp. explained at length why this Court may consider online and point-of-purchase advertising. Mot. at 7–9. And in *Oshinsky*, the court rightly disregarded documents that the plaintiff's claims were not

---

[2] Courts in this Circuit have repeatedly relied on the Wayback Machine, which archives moment-in-time images of websites and allows the user to search those images to determine what information a particular web address displayed at a particular time. *See, e.g.*, *United States v. Bansal*, 663 F.3d 634, 667–68 (3d Cir. 2011) (affirming district court's reliance on Wayback Machine); *Williams v. Zhou*, 2019 U.S. Dist. LEXIS 51961, at *9 n.9 (D.N.J. Mar. 27, 2019) ("The internet archive's Wayback Machine confirms that the content of the website has been substantially consistent as far back as December 6, 2013."). Screenshots of the archived TacoBell.com website are attached as Exhibit A to the Declaration of Jason A. Orr.

"based on." *Oshinsky*, 2009 WL 4120237, at *4 (D.N.J. Nov. 17, 2009). However, the court *did* find that several documents that "go to the very heart of Plaintiff's … claim" were incorporated by reference: "express written agreements that may trump any allegations of an implied contract." *Id.* Here, the Taco Bell website and the in-store advertisements submitted with Taco Bell Corp.'s Motion "go to the very heart" of Plaintiffs' claims because they are part of the "extensive marketing campaign" alleged in the complaint. Like the documents found to be incorporated by reference in *Oshinsky*, these documents directly undermine Plaintiffs' fraud claims.

## B.    Taco Bell Corp.'s Price Disclosures Negated Any Alleged Deception

The documents incorporated by reference in the complaint affirmatively demonstrate that no reasonable consumer would be deceived under the circumstances Plaintiffs allege.

The in-store advertisement for Chalupa Cravings Boxes and the Taco Bell website belie Plaintiffs' claims of common law fraud or violation of the NJ CFA. Plaintiffs do not plausibly allege reasonable reliance or a deceptive act where they allege they were deceived only after they ignored a visible and legible disclaimer in the "Librarian" ad, failed to seek out any information about whether the Green Brook Restaurant was participating in the promotion, and then visited the Green Brook Restaurant where they ignored every pricing disclosure (even after opting to pay for an upgrade) until the moment the cashier handed them a receipt. That is not the behavior of a reasonable consumer, who upon seeing the "participating locations" and "prices may vary" language in the ad would have sought out information on participating locations.

Had Plaintiffs checked Taco Bell's website, or called ahead to the Green Brook Restaurant, they would have learned that the Green Brook Restaurant was not participating in the promotion.[3]

---

[3] For that reason, Plaintiffs are incorrect that they have alleged an ascertainable loss, in that they were forced to waste time and gasoline to drive to the Green Brook Restaurant. Opp. at 9. Plaintiffs did not need to go to the Green Brook Restaurant to learn that it was not participating in the $5

And a reasonable consumer certainly would not have ignored the pricing information at the Green Brook Restaurant itself. Plaintiffs' assertion that they were totally unaware of the price "until after the transaction had been completed and they received the register receipt," Opp. at 2, rings disingenuous in light of their decision to pay more to substitute soft shell tacos in their Chalupa Cravings Boxes. *See* App'x C. Plaintiffs have not plausibly alleged that they reasonably relied on the "Librarian" ad, or that they were victims of deceptive conduct. *See Popejoy*, 2016 WL 3381229, at *4 (dismissing NJ CFA claim where defendant's webpage contained "a clear disclosure" that dispelled any alleged confusion from statements made in other marketing materials); *Ciser*, 2013 WL 5774121, at *5–6 (dismissing NJ CFA claim related to late charges where defendant had disclosed on its website and on invoices that it could charge late fees); *DeLuca v. Quicken Loans, Inc.*, 2012 WL 13034194, at *3–4 (D.N.J. Apr. 30, 2012) (where "purported misrepresentation [was] directly contradicted by disclosures made to Plaintiffs," such disclosures "negate[d] any justifiable reliance on … allegedly false promises and render[ed] the common law fraud claim deficient for lack of this essential element").

Plaintiffs do not address or even cite the *Killeen* decision, which is persuasive and factually analogous. In that case, the plaintiff alleged she saw advertisements that suggested she could save money by purchasing a McDonald's "Extra Value Meal" instead of purchasing those items *à la carte*. *Killeen v. McDonald's Corp.*, 317 F. Supp. 3d 1012, 1013 (N.D. Ill. 2018). In fact, she would have saved money by buying each of the items in the Extra Value Meal individually. *Id.* The court there found that the plaintiff's "theory has superficial appeal" but nevertheless held there was "no possibility of deception" from those advertisements because the prices for each menu item

---

Chalupa Cravings Box promotion. A quick phone call or visit to the Taco Bell website would have informed them of that fact.

were disclosed at the point of purchase. *Id.* at 1013–14. As the *Killeen* court explained, "anyone familiar with fast-food restaurants such as McDonald's surely knows that prices are typically displayed on menus located near the registers." *Id.* at 1013. The same is true here. Plaintiffs allege that they visited the Green Brook Restaurant, and their receipt confirms they "dine[d] in" that restaurant. Compl. ¶¶ 10–13; App'x C. The price for Chalupa Cravings Boxes was prominently displayed in the Green Brook Restaurant. Gebhardt Decl. ¶ 5 & Ex. A. Plaintiffs contend they were free to ignore the pricing disclosures that were right in front of their faces while they ordered their meal, and instead rely on their mistaken impression of the "Librarian" ad. Opp. at 11 (arguing in-store advertisement should not be considered if "not relied on by the Plaintiffs"). But to state that proposition is to refute the law. The *Killeen* court and other courts across the country have emphatically rejected Plaintiffs' head-in-the-sand approach to consumer fraud in similar contexts. *Killeen*, 317 F. Supp. 3d at 1013–1014 (holding no possibility of deception in light of disclosures to which plaintiff was exposed); *Popejoy*, 2016 WL 3381229, at *4; *Holt*, 370 F. Supp. 3d at 1169 (same); *Freeman*, 2013 WL 5946069, at *6–7 (same). This Court should do the same here.

In light of these facts—the facts Plaintiffs allege themselves in their complaint, and those indisputable facts from documents incorporated by reference—Plaintiffs have not plausibly alleged that the "Librarian" ad *caused* them to "overpay" for Chalupa Cravings Boxes, or to sustain any ascertainable loss whatsoever. These facts demonstrate that Plaintiffs *chose* to ignore all of the information that Taco Bell Corp. provided about where Plaintiffs could have obtained a Chalupa Cravings Box for $5, and *chose* to pay more than $5 for their orders.

Finally, in a footnote in their opposition, Plaintiffs now speculate that the $5 price was not available anywhere and that the "Librarian" ad therefore "may have been false." Opp. at 14 n.4. Plaintiffs not only fail to provide any basis to support this new allegation, but they also ***fail to***

10

***make this allegation in the complaint***. That allegation is untrue—but in any event Plaintiffs cannot amend or expand on facts pled in the complaint by way of a brief in response to this Motion. *Tobias v. United States*, 2014 WL 6693721, at *2 (D.N.J. Nov. 26, 2014). The complaint does not aver that the $5 promotional price was unavailable anywhere; it alleges only that Plaintiffs could not obtain that price *at the Green Brook Restaurant*. *See* Compl. ¶ 19 (alleging "the plaintiffs who were induced by this false and misleading advertisement have sustained an ascertainable loss, in the form of time wasted driving to *the subject Taco Bell*" (emphasis added)). Plaintiffs cannot create "a question of fact" by contradicting or supplementing their allegations now.

## III.    THE "LIBRARIAN" AD IS NOT DECEPTIVE AS A MATTER OF LAW

Even if this Court disagrees that the in-store print and internet advertisements are incorporated by reference—which they are under Third Circuit law—the "Librarian" ad itself undisputedly is and alone warrants dismissal. By taking the position that the "Librarian" ad "clearly violates" the NJ CFA ***"on its face,"*** Plaintiffs appear to contend that the ad's compliance with the NJ CFA can be decided on the face of the advertisement, as a matter of law. *See* Opp. at 2. This Court can and should grant the Motion on the basis of the "Librarian" ad alone.

As Plaintiffs appear to concede, it is well established that claims of deceptive advertising— especially regulatory violations of N.J.A.C. 13:45A-9.2—can be decided as a matter of law where no material facts are in dispute. Indeed, the purpose of Division of Consumer Affairs's regulations is to shrink the "room for debate whether particular commercial practices violate the Act." *Chattin v. Cape May Greene*, 216 N.J. Super. 618, 639 (App. Div. 1987). It is only "when an advertisement is *not* covered by a specific rule or regulation" that the standard becomes "whether the ad itself is misleading to the average consumer." *Id.* (emphasis added). Although New Jersey courts have found that whether an ad is misleading to the average consumer is "ordinarily [but not always] for the trier of fact … to decide," they have made no such pronouncement for the type of "*per se*"

11

violations that Plaintiffs allege here. *See id.* And indeed, there are many examples of courts deciding as a matter of law whether a defendant complied with administrative regulations, including Section 13:45A-9.2. *See, e.g.*, *Crozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 507 (D.N.J. 2012) (dismissing CFA claim under N.J.A.C. § 13:45A-9.2(a)(5)).[4]

The "Librarian" commercial does not constitute a *per se* violation of the NJ CFA because the advertisement itself contained a clear and conspicuous disclosure that meets the standard set forth in the Administrative Code. The code section at issue, Section 13:45A-9.2(a)(5), prohibits the use of the "type, size, location, lighting, illustration, graphic depiction, or color" to "obscur[e]" information in such disclaimers. No information is obscured in the "Librarian" ad: the disclaimer text is visible, legible, and located exactly where and when consumers expect to see qualifying information about price promotions. *See* Mot. at 14.

***Plaintiffs offer no legal support for their position*** that the "Librarian" ad "obscures" information within the meaning of the Administrative Code. And they attempt to distort the clarity of the disclaimer by offering tiny screenshots of an advertisement that is meant to be viewed on a much larger television set. *See* Opp. at 6. More troublingly, Plaintiffs appear to have doctored those screenshots by discoloring the images to reduce the contrast between the disclaimer and the background—what appears to be white on light gray in the image in Plaintiffs' brief is in fact white on *dark* gray in the actual commercial. Taco Bell Corp. has provided the Court with a video file

---

[4] *See also Gemini Restoration, Inc. v. Leone*, 2012 N.J. Super. Unpub. LEXIS 1850, at *20 (App. Div. Aug. 3, 2012) (granting summary judgment on issue of whether contract violated CFA regulations); *Dow v. Ind. Novelty Int'l*, 2010 N.J. Super. Unpub. LEXIS 3317, at *3 (Aug. 27, 2010) (granting summary judgment on issue of violations of N.J.A.C. § 13:45A-9.2); *Onyx Acceptance Corp. v. Trump Hotel & Casino Resorts, Inc.*, 2008 N.J. Super. Unpub. LEXIS 1095, at *29–30 (App. Div. Mar. 12, 2008) (affirming directed verdict on CFA claim under § 13:45A-9.2); *Green v. Continental Rentals*, 292 N.J. Super. 241, 257 (1994) (granting partial summary judgment on issue of whether agreements violate administrative requirements).

of the "Librarian" ad so that it can determine for itself that the disclaimer is visible, legible, and not obscured in any way. *Compare* Opp. at 6, *with* App'x A.

To the extent Plaintiffs' NJ CFA claim is grounded not on a *per se* violation but on the basis that the "Librarian" ad is misleading to the average consumer, Opp. at 2, 9; Compl. ¶¶ 18, 27, 59, 75, their claim still fails as a matter of law. The information in the "Librarian" ad—that Chalupa Cravings Boxes were available for $5 for a "limited time" at "participating restaurants"— is not deceptive, nor is the way that information is presented misleading. *See* Mot. at 13–15. Plaintiffs contend it is "black-letter law" that deciding the capacity of an ad to deceive the average consumer is "not the Court's role" but is "a question of fact for the jury," but that is not an accurate statement of the law. Courts routinely decide the question of deception as a matter of law and have dismissed New Jersey CFA claims where plaintiffs have failed to allege that the defendant engaged in conduct that could be considered misleading. *See, e.g.*, *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 515 (D.N.J. 2009) (dismissing plaintiff's NJ CFA claim where defendant's disclosures defeated any claim of deception); *Adamson v. Ortho-McNeil Pharmaceutical, Inc.*, 463 F. Supp. 2d 496, 501–04 (D.N.J. 2006) (determining as a matter of law whether defendants' marketing materials had the capacity to mislead and holding that plaintiff failed to state a claim under the NJ CFA because "none of the statements relied upon by the plaintiff contained any actionable misrepresentations or omission"). Because the "Librarian" ad does not have the capacity to mislead, it is appropriate for this Court to hold that Plaintiffs' claims fail as a matter of law.

Even if this Court were to find that Plaintiffs have alleged "unlawful conduct" through stating a *per se* violation or general deceptive acts, Plaintiffs would still need to sufficiently allege—with particularity under Federal Rule of Civil Procedure 9(b)—both an ascertainable loss and a causal relationship between that loss and the alleged unlawful conduct. *See Bosland v.*

*Warnock Dodge, Inc.*, 197 N.J. 543 (2009) (explaining that a prima facie cause of action for a violation of the NJ CFA requires (1) unlawful conduct by the defendant, (2) an ascertainable loss by the plaintiff, and (3) a causal relationship between the unlawful conduct and the loss). As explained below and in Taco Bell Corp.'s Motion, Plaintiffs have not alleged a causal relationship between the allegedly misleading "Librarian" ad and their purported loss.

First, the information in the "Librarian" ad is true and accurate and would not induce a reasonable consumer to believe that the $5 promotional price is available at every restaurant. Second, the multiple pricing disclosures at the Green Brook Restaurant "negate[] any causal connection between the alleged misrepresentation and the loss Plaintiffs claim[ed] to have suffered as a result." *DeLuca*, 2012 WL 13034194, at *3; *see also, e.g.*, *Popejoy*, 2016 WL 3381229, at *4 (dismissing complaint with prejudice where Sharp's webpage contained "a clear disclosure" that dispelled any alleged confusion from statements in other marketing materials); *Ciser*, 2013 WL 5774121, at *6 (dismissing claim that Nestle fraudulently omitted information about late charges where it had disclosed on its website and on invoices that it could charge late fees). Without a sufficient causal connection between the "Librarian" ad and Plaintiffs' purchase, their NJ CFA and fraud claims fail, and this Court should enter judgment in Taco Bell Corp.'s favor.

## IV. THIS COURT NEED NOT CONVERT TACO BELL CORP.'S MOTION INTO A MOTION FOR SUMMARY JUDGMENT

In an effort to convince this Court that Taco Bell Corp.'s Motion should be converted to a motion for summary judgment, Plaintiffs point to purported "questions of fact" that they contend "can not [*sic*] be decided at this stage of the litigation." Opp. at 14 n.4; *see also id.* at 2, 9, 11, 12, 13. But Taco Bell Corp.'s Motion is not based on any extrinsic facts except those in documents that are incorporated by reference in the complaint. For that reason, these documents "may be considered without converting the motion to dismiss into one for summary judgment." *Burlington*

*Coat Factory*, 114 F.3d at 1426. This Court can decide the Motion without resort to further discovery and motions that will needlessly consume the parties' and this Court's resources.

Should this Court disagree, it should order limited discovery only into two issues that Plaintiffs contend are necessary to resolve their "questions of fact." That is, if this Court converts this Motion into a motion for summary judgment, it should allow only limited discovery on (1) what advertisements and other pricing disclosures were displayed at the Green Brook Restaurant for the Chalupa Cravings Box promotion, and (2) what pricing disclosures Plaintiffs saw or relied on related to that promotion. That would align with previous decisions of this Court in converting a motion on the pleadings into a motion for summary judgment and then ordering limited discovery that is narrowly tailored to the key factual issues of the converted motion. *See, e.g.*, *Forsatz v. The Contributorship Companies*, 2005 WL 2704895, at *2 (D.N.J. Oct. 20, 2005) (converting 12(b)(6) motion into motion for summary judgment and ordering that "pertinent discovery may be taken with respect to the factual basis for asserting principles of equitable tolling" and that discovery would "be overseen by Magistrate Judge Falk").[5]

## V.    <u>CONCLUSION</u>

For the foregoing reasons, this Court should enter judgment in Taco Bell Corp.'s favor.

---

[5] *See also, e.g.*, *Rosendale Manor Assocs., LLP v. Borough of Madison*, 2005 WL 8175461, at *2 (D.N.J. Mar. 11, 2005) (converting Rule 12(b)(6) motion to motion for summary judgment and ordering that "pertinent discovery may be taken with respect to the use of the Kings Road cell tower site"); *Huggard v. Crown Bank*, 2012 WL 529548, at *5 (D.N.J. Feb. 17, 2012) (converting Rule 12(b)(6) motion to motion for summary judgment and ordering "that the parties engage in limited discovery … related to the issues presented in Defendants' converted Motion for Summary Judgment").

Dated: January 27, 2020                    O'MELVENY & MYERS LLP

                                           By: */s/* Allen Burton
                                           _____
                                              ALLEN BURTON (NJ Bar #020742001)
                                              aburton@omm.com
                                              O'MELVENY & MYERS LLP
                                              7 Times Square
                                              New York, NY 10036
                                              Phone: (212) 326-2067
                                              Facsimile: (212) 326-2061

                                              *Attorney for Defendant*
                                              *Taco Bell Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant Taco Bell Corp.'s Reply in Support of Defendant's Motion for Judgment on the Pleadings was served on all parties via the Court's CM/ECF system on January 27, 2020.

Dated:  January 27, 2020                    O'MELVENY & MYERS LLP

By: _/s/_ Allen Burton
    ALLEN BURTON (NJ Bar #020742001)
    aburton@omm.com
    O'MELVENY & MYERS LLP
    7 Times Square
    New York, NY 10036
    Phone:  (212) 326-2067
    Facsimile:  (212) 326-2061

    *Attorney for Defendant*
    *Taco Bell Corp.*